UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 5:21 cr 57-KDB |
| v. | **BILL OF INDICTMENT** |
| (1) ROGER NANCE a/k/a "BUCK NANCE," (2) CLIFTON RAY ANDERSON, JR.; and (3) HUIE KENNETH NICHOLSON, Defendants | Violations: 18 U.S.C. § 371<br>26 U.S.C. § 7201<br>18 U.S.C. § 1952(a)(3)<br>26 U.S.C. § 5601(a)(1)<br>26 U.S.C. § 5601(a)(8)<br>26 U.S.C. § 5601(a)(11)<br>18 U.S.C. § 2 |

**THE GRAND JURY CHARGES THAT:**

## INTRODUCTION

At all times material to this Bill of Indictment:

1. Beginning no later than April 19, 2018 and continuing until on or about September 23, 2020, in Wilkes County, North Carolina, within the Western District of North Carolina and elsewhere, the defendants (1) ROGER NANCE a/k/a "BUCK NANCE" (BUCK NANCE), (2) CLIFTON RAY ANDERSON, JR. (ANDERSON); and (3) HUIE KENNETH NICHOLSON (NICHOLSON) conspired and agreed with each other and others known and unknown to the Grand Jury to operate and maintain an illegal still in Wilkes County for the production of over 9,000 gallons of untaxed liquor, also known as moonshine, which they transported in interstate commerce to Virginia for sale and distribution, resulting in a total federal and state excise and sales tax loss in excess of $100,000.

*Relevant Individuals and Entities*

2. BUCK NANCE, defendant herein, was a resident of Wilkes County, and the master-distiller of legally produced and taxed liquor for a licensed distiller in North Wilkesboro, North Carolina. At the same time, BUCK NANCE conspired and agreed with the defendants named herein and others known and unknown to the Grand Jury to build and operate an illegal still at a certain farm known to the Grand Jury in Wilkes County, North Carolina (hereinafter the "Wilkes County barn") to produce moonshine that he purchased and delivered to a moonshine distributor in and near Stony Creek, Virginia without the payment of excise taxes due to the United States, the State of North Carolina, and the Commonwealth of Virginia.

3. ANDERSON, defendant herein, established and operated an illegal still at the Wilkes County barn which produced hundreds of gallons of moonshine per week, which moonshine was purchased by BUCK NANCE for approximately $10 per gallon, less the cost of sugar and other supplies provided by BUCK NANCE.

4. NICHOLSON, defendant herein, drove white vans provided by BUCK NANCE to pick up moonshine in plastic jugs from the still operated by ANDERSON and BUCK NANCE in Wilkes County, North Carolina, which moonshine NICHOLSON transported in interstate commerce to a certain shed known to the Grand Jury in and near Stony Creek, Virginia (hereinafter "the Virginia stash house"). Person #1 paid and caused BUCK NANCE and NICHOLSON to be paid approximately $20 in cash for each gallon of moonshine they delivered to Virginia.

5. PERSON #1, an unindicted coconspirator herein, was a resident of Dinwiddie, Virginia who began purchasing moonshine from BUCK NANCE in and around 2018. BUCK NANCE replaced PERSON #1's previous source of untaxed liquor.

6. PERSON #2, an unindicted coconspirator herein, owned a certain farm known to the Grand Jury in Wilkes County, on which he rented a barn to ANDERSON for $500 per month. PERSON #2 had access to the barn and observed the still in operation, sometimes using mash from the operation to feed his cattle. PERSON #2 also allowed BUCK NANCE to park white vans used to transport moonshine on his property and observed these vans coming and going from the barn on his property.

7. PERSON #3, a resident of Wilkes County, made approximately three deliveries of moonshine in 2019 from Wilkes County to the Virginia stash house.

### *The Moonshine Industry:*

8. "Moonshine" is illegal liquor on which federal and state excise taxes have not been paid. Other words commonly used to describe untaxed liquor include "shine," "corn," "corn liquor," and "bootleg."

9. Moonshine is manufactured in stills, which consist of one or more pots. Still pots are typically made from galvanized metal or aluminum and have wooden sides.

10. At a minimum, a still pot requires sugar, yeast, malt, water, and heat to produce moonshine. Sugar is the primary ingredient used in making moonshine, and an average of 100 pounds of sugar is added for each 100 gallons of pot capacity. Thus, an 800-gallon still pot would use up to eight 100-pound sacks of sugar.

11. When all the ingredients are mixed into the still pot, the still pot has been "mashed in." The still pot is monitored for temperature and stirred periodically, usually by "still hands" hired by the owner/operator of the still. When the yeast has converted the sugar to alcohol, the still pot is "run" by boiling off the alcohol into a cooling box. The alcohol is

transferred to a proofing barrel, where batches of moonshine are mixed to adjust the final "proof," also known as the concentration, of the alcohol. Moonshine is typically 100 proof, which is 50% alcohol. A run typically takes between five to nine days.

12. Most stills produce at least 12 gallons of moonshine for every 100-pound sack of sugar. Thus, an 800-gallon still pot would produce approximately 96 gallons of moonshine for each run.

13. Once the moonshine is in its final form, it is usually transferred to containers for sale. One-gallon plastic jugs are commonly used in the moonshine business. The plastic jugs used for moonshine appear similar to ordinary milk jugs but are made with heavier plastic and are known as industrial gallons. The heavier plastic is necessary so that the jugs, when full of moonshine, can be stacked into trucks and transported without breaking.

14. The jugs containing the moonshine are transported to wholesalers and then to retailers for sale to the public in what are commonly known as "shot houses" or "nip joints." Moonshine is typically sold in case lots to the wholesaler. A case lot consists of six gallons of moonshine.

### *Laws Governing the Manufacture of Alcohol*:

15. The term "distilled spirits" is defined as the substance known as ethyl alcohol, ethanol, or spirits of wine in any form, and a "distiller" is defined as any person who produces distilled spirits from any source or substance (26 U.S.C. § 5002(a)). The term "untaxed liquor" as used in this Bill of Indictment has the same meaning as the term untaxed "distilled spirits" and "moonshine."

16. Any person can engage in the business of distilling spirits by obtaining a basic permit from the Alcohol & Tobacco Tax & Trade Bureau (the "TTB") (27 U.S.C. § 203(b)) and complying with all requirements such as registration (26 U.S.C. § 5179), providing bond (26 U.S.C. § 5173), if necessary, paying the requisite taxes (26 U.S.C. § 5001(a)), and other requirements.

17. Generally, the tax attaches to distilled spirits as soon as the distilled spirits are made (26 U.S.C. § 5001(b)). The distiller is responsible for paying the tax (26 U.S.C. § 5005(a)), which is payable to the TTB (26 U.S.C. § 5061). The tax owed must be paid at the time the distilled spirits are removed from the bonded premises (26 U.S.C. § 5007). There was, however, a reduced tax rate in effect for calendar years 2018, 2019 and 2020 which became permanent for qualified producers in 2021.

18. The State of North Carolina imposes a tax on distilled liquor.

19. The Commonwealth of Virginia imposes a sales tax on distilled liquor.

# COUNT ONE

Violation: 18 U.S.C. § 371 (Conspiracy to
Defraud the United States)

20. Paragraphs 1 through 19 of the Introduction to this Bill of Indictment are hereby realleged and incorporated into Count One by reference herein.

21. Beginning no later than April 19, 2018, and continuing through at least September 23, 2020, in Wilkes County, within the Western District of North Carolina, and elsewhere, the defendants,

> **(1) ROGER NANCE a/k/a "BUCK NANCE;"**
> **(2) CLIFTON RAY ANDERSON, JR.; and**
> **(3) HUIE KENNETH NICHOLSON**

did knowingly combine, conspire, confederate, and agree with one another, and with others both known and unknown to the Grand Jury, to:

(a) defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the TTB in its regulation of the lawful production and distribution of distilled spirits a/k/a moonshine and the ascertainment, computation, assessment, and collection of the revenue: to wit, excise taxes on distilled spirits;

(b) knowingly travel and cause other persons to travel in interstate commerce and to knowingly use and cause others to use a facility in interstate commerce, specifically the telephone, all of which acts were done with the intent to promote, manage, establish, carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, the unlawful activity being a business enterprise involving liquor on which the Federal excise tax has not been paid in violation of Title 26, United States Code, Section 5001, 5006, and 5601(a)), all in violation of Title 18, United States Code, Section § 1952(a)(3); and

(c) knowingly produce and receive untaxed liquor, in violation of Title 26, United States Code, Sections 5601(a)(1), (8), and (11).

## *OBJECT OF THE CONSPIRACY*

22. The objective of the conspiracy was to produce moonshine in Wilkes County, North Carolina, transport such moonshine in interstate commerce to Virginia, and receive, sell, and distribute such moonshine in Virginia.

## MEANS AND METHODS OF THE CONSPIRACY

23. The means and methods used to carry out the goals of the conspiracy include, but are not limited to, the following:

   a. ANDERSON would lease the Wilkes County barn from PERSON #2 and construct a still for the production of moonshine and the operation of a moonshine business. ANDERSON did not obtain a permit to distill spirits at the Wilkes County barn.

   b. BUCK NANCE would purchase and deliver materials including bulk sugar to the Wilkes County barn for ANDERSON's use in distilling moonshine. BUCK NANCE and ANDERSON did not register their moonshine distilling business enterprise with the TTB, obtain the required permits from TTB, or inform TTB that a bond may be required to operate a distilling business.

   c. ANDERSON would distill hundreds of gallons of moonshine, which he would place in plastic jugs provided by BUCK NANCE. The jugs of moonshine produced by ANDERSON and BUCK NANCE were not labeled in any way as required by TTB and did not include excise tax stamps as required by the State of North Carolina.

   d. BUCK NANCE would sell most, if not all, of the moonshine produced by ANDERSON to PERSON #1 in Virginia, making deliveries to Virginia once or twice a week.

   e. PERSON #1, a resident of Dinwiddie, Virginia, arranged for the delivery of moonshine to the Virginia stash house located on a private property in and near Stony Creek, Virginia

   f. ANDERSON would load cases of moonshine into white vans at the Wilkes County barn. BUCK NANCE, NICHOLSON, and PERSON #3 would drive the moonshine to the Virginia stash house.

   g. In Virginia, PERSON #1 would pay and cause another person to pay BUCK NANCE, NICHOLSON, or PERSON #3 approximately $20 per gallon in U.S. currency for the moonshine he delivered, knowing that required federal and state excise taxes had not been paid and would not be paid.

   h. PERSON #1 would in turn sell and cause others to sell the illegal moonshine distilled in North Carolina to customers in Virginia for $30 to $50 per gallon without paying required excise taxes.

5

## OVERT ACTS

24. In furtherance of the conspiracy and to affect the objects thereof, there was committed by at least one of the co-conspirators herein, in the Western District of North Carolina and elsewhere, at least one of the following overt acts, among others:

   a. Beginning no later than April 19, 2018 and continuing until on or about September 23, 2020, ANDERSON operated a still in PERSON #2's Wilkes County barn with the capacity to make approximately 18,000 gallons of moonshine per year.

   b. Beginning no later than January 12, 2018 and continuing until in and around September 2020, ANDERSON paid PERSON #2 approximately $500 per month to rent the Wilkes County barn in which he and BUCK NANCE operated a still and a moonshine business.

   c. Beginning no later than January 12, 2018 and continuing until on or about September 23, 2020, BUCK NANCE supplied ANDERSON with all of the raw materials required to produce moonshine—including bulk sugar, yeast, grain, and plastic gallon containers. BUCK NANCE paid ANDERSON $10 per gallon in U.S. currency, minus the cost of the materials for the cases of one-gallon jugs of moonshine that ANDERSON produced and loaded into one of BUCK NANCE's vans.

   d. On or about each of the dates listed below, PERSON #1 purchased at least 20 cases of moonshine distilled by ANDERSON in the Wilkes County barn and delivered by BUCK NANCE, NICHOLSON, or PERSON #3 to the Virginia stash house. Each case contains six gallons of untaxed moonshine, which equates to 120 gallons per delivery. Each delivery was preceded by a telephone call to PERSON #1 from BUCK NANCE, NICHOLSON, or PERSON #3 at the telephone numbers listed below:

   |       | DATE       | DRIVER      | TELEPHONE NO.     |
   |-------|------------|-------------|-------------------|
   | i.    | 10/15/2019 | BUCK NANCE  | (336) XXX-X548    |
   | ii.   | 10/23/2019 | BUCK NANCE  | (336) XXX-X548    |
   | iii.  | 10/28/2019 | BUCK NANCE  | (336) XXX-X548    |
   | iv.   | 11/2/2019  | PERSON #3   | (336) XXX-X859    |
   | v.    | 11/7/2019  | PERSON #3   | (336) XXX-X859    |
   | vi.   | 11/12/2019 | PERSON #3   | (336) XXX-X859    |
   | vii.  | 3/1/2020   | BUCK NANCE  | (336) XXX-X548    |
   | viii. | 3/8/2020   | BUCK NANCE  | (336) XXX-X548    |

|        | DATE      | DRIVER     | TELEPHONE NO.      |
|--------|-----------|------------|--------------------|
| ix.    | 3/20/2020 | NICHOLSON  | (336) XXX-X673     |
| x.     | 3/27/2020 | NICHOLSON  | (336) XXX-X673     |
| xi.    | 4/9/2020  | BUCK NANCE | (336) XXX-X548     |
| xii.   | 4/17/2020 | NICHOLSON  | (336) XXX-X673     |
| xiii.  | 4/28/2020 | BUCK NANCE | (336) XXX-X548     |
| xiv.   | 5/5/2020  | BUCK NANCE | (336) XXX-X548     |
| xv.    | 5/21/2020 | NICHOLSON  | (336) XXX-X673     |
| xvi.   | 5/28/2020 | NICHOLSON  | (336) XXX-X673     |
| xvii.  | 6/3/2020  | BUCK NANCE | (336) XXX-X548     |
| xviii. | 6/6/2020  | NICHOLSON  | (336) XXX-X673     |
| xix.   | 6/9/2020  | BUCK NANCE | (336) XXX-X548     |
| xx.    | 6/16/2020 | NICHOLSON  | (336) XXX-X673     |
| xxi.   | 6/20/2020 | BUCK NANCE | (336) XXX-X548     |
| xxii.  | 6/29/2020 | NICHOLSON  | (336) XXX-X673     |
| xxiii. | 7/7/2020  | BUCK NANCE | (336) XXX-X548     |
| xxiv.  | 7/14/2020 | BUCK NANCE | (336) XXX-X548     |
| xxv.   | 7/22/2020 | NICHOLSON  | (336) XXX-X673     |
| xxvi.  | 8/5/2020  | BUCK NANCE | (336) XXX-X548     |
| xxvii. | 8/16/2020 | NICHOLSON  | (336) XXX-X673     |
| xxviii.| 8/25/2020 | NICHOLSON  | (336) XXX-X673     |
| xxix.  | 9/2/2020  | BUCK NANCE | (336) XXX-X548     |
| xxx.   | 9/8/2020  | BUCK NANCE | (336) XXX-X548     |
| xxxi.  | 9/17/2020 | BUCK NANCE | (336) XXX-X548     |
| xxxii. | 9/19/2020 | NICHOLSON  | (336) XXX-X673     |

All in violation of Title 18, United States Code, Section 371.

7

## COUNT TWO

Violation: 26 U.S.C. § 7201 and 18 U.S.C. § 2
(Tax Evasion)

25. Paragraphs 1 through 19 of the Introduction to this Bill of Indictment and Count One are hereby realleged and incorporated into Count Two by reference herein.

26. Beginning no later than April 19, 2018, and continuing through at least September 23, 2020, in Wilkes County, within the Western District of North Carolina, and elsewhere, the defendants,

> **(1) ROGER NANCE a/k/a "BUCK NANCE;"**
> **(2) CLIFTON RAY ANDERSON, JR.; and**
> **(3) HUIE KENNETH NICHOLSON**

aided and abetted by each other, and persons known and unknown to the Grand Jury, did willfully attempt to evade and defeat the excise tax imposed on distilled spirits by Section 5001 of the Internal Revenue Code (Title 26), due and owing to the United States of America at the time said illegal spirits were produced, removed, sold, transported, and used. Defendants evaded the payment of excise tax by constructing an unregistered still in the Wilkes County barn, delivering supplies, and transporting illegal moonshine in several non-descript white vans, storing illegal moonshine in the Virginia stash house, and conducting all transactions in U.S. currency, among other means. Defendants distilled, transported, and sold over 8,000 proof gallons of moonshine, for which they then well knew a substantial amount of Federal excise tax was due and owing to the United States.

All in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code, Section 2.

## COUNT THREE

Violation: 26 U.S.C. § 5601(a)(1) (Possession of an
Unregistered Still)

27. Paragraphs 1 through 19 of the Introduction to this Bill of Indictment and Count One are hereby realleged and incorporated into Count Three by reference herein.

28. On or about February 23, 2020, in Wilkes County, in the Western District of North Carolina, the defendant,

**(2) CLIFTON RAY ANDERSON, JR.**

did knowingly have in his possession and custody and under his control, a still and distilling apparatus set up at the Wilkes County barn, which still and distilling apparatus was not registered as required by Title 26, United States Code, Section 5179(a).

In violation of Title 26, United States Code, Section 5601(a)(1).

### COUNT FOUR

Violation: 26 U.S.C. § 5601(a)(8) and 18 U.S.C. § 2
(Unlawful Production of Distilled Spirits)

29. Paragraphs 1 through 19 of the Introduction to this Bill of Indictment and Count One are hereby realleged and incorporated into Count Four by reference herein.

30. Beginning no later than April 19, 2018, and continuing through at least September 23, 2020, in Wilkes County, within the Western District of North Carolina, and elsewhere, the defendants,
    **(1) ROGER NANCE a/k/a "BUCK NANCE" and**
    **(2) CLIFTON RAY ANDERSON, JR.**

neither of which being a distiller authorized by law to produce distilled spirits, aided, and abetted by each other, and persons known and unknown to the Grand Jury, did knowingly produce distilled spirits by distillation from mash and other material at the Wilkes County barn.

In violation of Title 26, United States Code, Section 5601(a)(8) and Title 18, United States Code, Section 2.

### COUNT FIVE

Violation: 26 U.S.C. § 5601(a)(11) and 18 U.S.C. § 2
(Unlawful purchase and receipt of distilled spirits)

31. Paragraphs 1 through 19 of the Introduction to this Bill of Indictment and Count One are hereby realleged and incorporated into Count Five by reference herein.

32. Beginning no later than April 19, 2018, and continuing through at least September 23, 2020, in Wilkes County, within the Western District of North Carolina, and elsewhere, the defendant,

### (1) ROGER NANCE a/k/a "BUCK NANCE"

did purchase, receive, and process distilled spirits knowing that any tax due on such spirits had not been paid or determined as required by law.

In violation of Title 26, United States Code, Section 5601(a)(11) and Title 18, United States Code, Section 2.

### COUNTS SIX through TEN

Violation: 18 U.S.C. §§ 1952(a)(3) and 2
(Travel Act)

33. Paragraphs 1 through 19 of the Introduction to this Bill of Indictment and Count One are hereby realleged and incorporated into Counts Six through Ten by reference herein.

34. On or about the dates listed below for each of Counts Six through Ten, in the Western District of North Carolina and elsewhere, the defendant named in each Count traveled in interstate commerce from the State of North Carolina to the Commonwealth of Virginia and used a facility in interstate commerce, namely wire communications to and from the telephone device assigned to the number listed in each Count, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving liquor on which Federal excise tax has not been paid, and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of such unlawful activity, to wit: the transport, delivery, and sale of untaxed liquor.

| COUNT | DATE | DEFENDANT | TELEPHONE NO. |
|---|---|---|---|
| SIX | 6/9/2020 | (1) ROGER NANCE a/k/a "BUCK NANCE," | (336) XXX-X548 |
| SEVEN | 7/7/2020 | (1) ROGER NANCE a/k/a "BUCK NANCE," | (336) XXX-X548 |
| EIGHT | 8/5/2020 | (1) ROGER NANCE a/k/a "BUCK NANCE," | (336) XXX-X548 |
| NINE | 8/16/2020 | (3) HUIE KENNETH NICHOLSON | (336) XXX-X673 |
| TEN | 8/25/2020 | (3) HUIE KENNETH NICHOLSON | (336) XXX-X673 |

In violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

35. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given of Title 18, United States Code, Section 982 and Title 28, United States Code, Section 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to Title 18, United States Code, Section 981, and all specified unlawful activities listed or referenced in Title 18, United States Code, Section 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

   a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Indictment; and

   b. If, as set forth in Title 21, United States Code, Section 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

## A TRUE BILL




WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY


MICHAEL E. SAVAGE
ASSISTANT UNITED STATES ATTORNEY